IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

FRANK MICHAEL ABRAMO,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C15-4038

REPORT AND RECOMMENDATION

TABLE OF CONTENTS

I.    INTRODUCTION .................................. 2

II.   PROCEDURAL BACKGROUND ....................... 2

III.  PRINCIPLES OF REVIEW .......................... 3

IV.  FACTS ........................................... 5
    A.   *Abramo's Education and Employment Background* ............ 5
    B.   *Vocational Expert's Testimony from Administrative Hearing
        Held on November 19, 2013* .......................... 5
    C.   *Abramo's Medical History* ........................... 6

V.    CONCLUSIONS OF LAW ........................... 11
    A.   *ALJ's Disability Determination* ...................... 11
    B.   *Objections Raised By Claimant* ...................... 13
    C.   *Reversal or Remand* ............................. 18

VI.  CONCLUSION ................................... 18

VII. RECOMMENDATION .............................. 19

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Frank Michael Abramo on May 19, 2015, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title XVI supplemental security income ("SSI") benefits. Abramo asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him SSI benefits. In the alternative, Abramo requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On January 3, 2012, Abramo applied for SSI benefits.[1] In his application, Abramo alleged an inability to work since June 1, 2009 due to mental illness. Abramo's application was denied on April 23, 2012. On November 19, 2012, his application was denied on reconsideration. On November 19, 2013, Abramo appeared via video conference with his attorney before Administrative Law Judge ("ALJ") Rhonda Greenberg for an administrative hearing.[2] Abramo and vocational expert Deborah A. Determan testified at the hearing. In a decision dated February 28, 2014, the ALJ denied Abramo's claim. The ALJ determined that Abramo was not disabled and not entitled to SSI benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Abramo appealed the ALJ's decision. On March 30, 2015, the Appeals Council denied Abramo's request for review. Consequently, the ALJ's February 28, 2014 decision was adopted as the Commissioner's final decision.

---

[1] The protective filing date is December 31, 2011.

[2] In her decision, the ALJ stated that the administrative hearing was held on November 14, 2013; however, the transcript provides November 19, 2013 as the hearing date. *Compare* Administrative Record at 13 (ALJ's decision) *with* Administrative Record at 36 (hearing transcript.)

2

On May 19, 2015, Abramo filed this action for judicial review. The Commissioner filed an Answer on July 30, 2015. On August 31, 2015, Abramo filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing other work that exists in significant numbers in the national economy. On October 29, 2015, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On November 9, 2015, Abramo filed a reply brief. On the same date, Judge Mark W. Bennett referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### III. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence."

3

*Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as

substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## IV. FACTS

### A. Abramo's Education and Employment Background

Abramo was born in 1963. In school, he completed the seventh grade. He attended school in the eighth grade, but did not complete the eighth grade. He has no further schooling or vocational training. In the past, Abramo worked as an animal control officer and a security guard.

### B. Vocational Expert's Testimony from Administrative Hearing Held on November 19, 2013

At the administrative hearing, the ALJ provided vocational expert Deborah Determan with a hypothetical for an individual who has the:

> ability to perform medium-level of exertion, simple tasks, occasional interaction with supervisors, infrequent and incidental interactions with coworkers; and that the hypothetical individual need not listen or talk to coworkers to perform job functions; and no contact with the public.

(Administrative Record at 71.) The vocational expert testified that under such limitations, Abramo could perform the following jobs: (1) laundry worker, (2) solderer, and (3) inserting machine operator. The ALJ asked the vocational expert a second hypothetical question that was identical to the first hypothetical, but added the following limitations:

> [the] individual could only occasionally climb stairs and ramps; cannot climb ladders, ropes, or scaffold; cannot work around unprotected heights, dangerous moving machinery, or operating heavy motor equipment; cannot be exposed to temperature extremes; can be occasionally exposed to humidity, wetness, odors, fumes, dust, gases, and poor ventilation.

5

(Administrative Record at 72.) The vocational expert testified that under such limitations, Abramo could continue to perform the solderer and inserting machine operator jobs, and could also perform the job of photocopy machine operator.

*C. Abramo's Medical History*

On February 14, 2012, Abramo met with Patel Reddy, PA, and Dr. Ronald Brinck, M.D., for a psychiatric evaluation. Abramo's chief complaints were depression and anxiety. Abramo also reported having learning problems. Specifically, he stated he was "kicked out of school in the 8th grade because he would skip school and hide in the corners because he was too scared and anxious."[3] Upon examination, Reddy and Dr. Brinck diagnosed Abramo with an anxiety disorder. Reddy and Dr. Brinck assessed Abramo's GAF at 47-53. Reddy and Dr. Brinck recommended medication and group therapy as treatment.

On March 27, 2012, Abramo was referred by Disability Determination Services ("DDS") to Dr. Michael P. Baker, Ph.D., for a psychodiagnostic mental status examination. On the mental status examination, Dr. Baker found:

> [Abramo] was unable to recall any of four items after three minutes. He was able to subtract 3's from 20 without difficulty, but could not conduct serial sevens, he stated. General fund of information was fairly low, giving only the last three presidents and two of the states around Iowa. . . . He had difficulty with arithmetic items beyond the simplest ones. He was alert and well oriented. Thought process seemed without looseness of association. There was no detection of delusional thought.

(Administrative Record at 469.) Dr. Baker also administered the Wechsler Adult Intelligence Scale (Fourth Edition) ("WAIS-IV") test to Abramo. Dr. Baker interpreted the results of the test as follows:

---

[3] Administrative Record at 629.

6

> Mr. Abramo is functioning intellectually in the borderline to low-average range. It is the Processing Speed index which may be affected by his anxiety level, which is the primary weakness.

(Administrative Record at 470-71.) Dr. Baker diagnosed Abramo with anxiety disorder, avoidant and schizotypal personality traits, and borderline intellectual functioning. Dr. Baker assessed Abramo's GAF score at 45. Dr. Baker concluded:

> In regards to mental limitation related to work activities, [Abramo] would seem able to remember and understand instructions, procedures, and locations for simple, non-complex tasks. His maintenance of attention, concentration, and pace for carrying out instruction may be certainly affected by anxiety level. Social anxiety problems, primarily involving thoughts of mistrust, will affect interacting appropriately with supervisors, coworkers and the public. There is not additional reason to suspect [Abramo] could not use good judgment and respond appropriately to changes in the workplace in non-complex, non-stressful type work situations.

(Administrative Record at 471.)

On April 23, 2012, Dr. Dee Wright, Ph.D., reviewed Abramo's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Abramo. On the Psychiatric Review Technique assessment, Dr. Wright diagnosed Abramo with borderline intellectual functioning, affective disorders, and anxiety disorder. Dr. Wright determined Abramo had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Wright found that Abramo was moderately limited in his ability to: understand and remember detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or in proximity to others without being distracted by them, complete

7

a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Dr. Wright concluded:

> The preponderance of the evidence in file would support cognitive limitations of function. [Abramo] does exhibit variable sustained attention/concentration. [He] would have difficulty consistently performing very complex cognitive activity that demanded prolonged attention to minute, complex details and rapid shifts in alternating attention. Despite these restrictions, [Abramo] is able to sustain sufficient concentration/attention and memory functioning to perform non-complex, repetitive, and routine cognitive activities without significant limitations of function. The preponderance of the evidence in file would support limitations of function with social interaction in [Abramo's] case. Given [his] history and current presentation, he would have difficulty consistently performing activities in settings where you are required to have frequent stressful contact with large numbers of unfamiliar individuals. However, in a low stress and predictable environment where [Abramo] would have limited interaction with a small number of familiar individuals, [he] does possess sufficient social skills to sustain short-lived, superficial interaction with others when it is in his perceived interest to do so.

(Administrative Record at 90.)

On August 22, 2012, Abramo was referred by DDS to Amy J. Tegels, APRN, for a disability examination. Abramo's chief complaints included low back pain and left leg pain associated with a fall from 10 years prior to the disability examination, right arm pain associated with a torn biceps from 2 years prior to the disability examination, and a pulmonary embolus diagnosed 1 year prior to the disability examination. In discussing these ailments with Abramo, Tegels noted:

8

> his condition limits his ability to function at home and at work as the pain is present virtually all of the time and any activity will aggravate it. Additionally, he feels tired all of the time and spends most of each day lying down resting. He claims that he can sit for 15 minutes without having to change positions. After standing for 15 minutes, he has to sit. He can walk for only 8 blocks before hav[ing] to stop and break. Lifting limit is about 25lbs with pain. He can't bend or twist without pain. He reports pain with climbing stairs, kneeling and crawling. He has no coordination issues. . . . He does have decreased tolerance to dust and fumes.

(Administrative Record at 581.) Abramo described his activities of daily living to Tegels as follows:

> A typical day for him consists of personal hygiene, he does not do any cooking or cleaning, he is now living at the mission center for homeless and resting as much as possible. He is unable to do cleaning around the mission due to pain. He does not do anything during the day.

(Administrative Record at 581-82.) Upon examination, Tegels diagnosed Abramo with lumbago, arm strain associated with biceps tendon rupture, embolism, status post anticoagulation therapy, bilateral foot neuropathy, anxiety, and major depressive disorder. Tegels concluded:

> On physical exam today, [Abramo] does have a decrease in his physical capacity with upper and lower extremity problems. He does have a decrease in strength in his right upper extremity from a retained biceps tendon tear. He also has left hip pain and altered range of motion with some radiculopathy and marked edema in []his left lower extremity. He is not able to be on his feet or sit for extended periods of time. He will need certain restrictions for employment. It will also be hard for him to attain employment with his previous work injuries. I did appreciate neurological deficits today in his left foot. He will have difficulties with bending, stooping, climbing, and crawling.

> He also has issues with a history of a pulmonery [(sic)] embolus. He does have some residual shortness of breath secondary to this and is on chronic anticoagulation therapy, which does come with moderate risk factors. He does have bleeding complications if an injury were to occur. He will definitely have trouble finding any type of employment with this that involves labor.
>
> [H]e also suffers from depression and anxiety, of which is fairly well controlled. He does seem quite anxious today on exam.

(Administrative Record at 585.)

On January 16, 2013, Abramo met with Gary Lewis, LISW, for a mental health assessment. Abramo reported having "strong problems" with social anxiety. He reported living in a transitional facility for homeless men, and stated he "seldom leaves the facility due to panic reactions[.]"[4] On the mental status examination, Lewis found:

> [Abramo] reports mood as anxious, depressed, distressed and fearful. Affect is congruent with mood and congruent with circumstances. . . . He [has] racing thoughts and describes obsessive thoughts. H[is] fund of knowledge is fair. His concentration is impaired. Memory: impaired. His intelligence appears below. His insight is limited. Judgment appears fair. . . .

(Administrative Records at 616-17.) Lewis also noted a history of alcoholism, but indicated Abramo had been sober for 11 months. Lewis diagnosed Abramo with social phobia, panic disorder with agoraphobia, and anxiety disorder. Lewis assessed a GAF score of 55. Lewis recommended individual therapy as treatment.

---

[4] Administrative Record at 616.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Abramo is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *see also* 20 C.F.R. § 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether

11

the claimant can perform other jobs in the economy. If so, the
claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Abramo had not engaged in substantial gainful activity since December 31, 2011, the application date. At the second step, the ALJ concluded from the medical evidence Abramo had the following severe impairments: obesity, pulmonary disease/pulmonary embolism, affective disorder, anxiety disorder, borderline intellectual functioning, and a history of substance abuse (alcohol). At the third step, the ALJ found if Abramo stopped the substance abuse, he would not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Abramo's RFC as follows:

> If [Abramo] stopped the substance use, [he] would have the residual functional capacity to perform medium work . . . except with occasional climbing of stairs and ramps; no climbing of ladders[,] ropes or scaffolds; no work around unprotected heights, dangerous moving machinery or operating heavy motor equipment or exposure to temperature extremes; occasional exposure to humidity, wetness, odors, fumes, dusts, gases and poor ventilation. [Abramo] can perform simple tasks with occasional interaction with supervisors, infrequent and incidental interact[ion] with coworkers in that he need not listen or talk to coworkers to perform job function, no contact with the public and work at his own pace so long as he meets production norms.

(Administrative Record at 25.) Also at the fourth step, the ALJ determined if Abramo stopped the substance abuse, he would be unable to perform his past relevant work. At the fifth step, the ALJ determined if Abramo stopped the substance abuse, then based on his age, education, previous work experience, and RFC, he could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Abramo was not disabled.

### B. Objections Raised By Claimant

Abramo argues the ALJ's decision and RFC assessment are not supported by substantial evidence in the record. Specifically, Abramo asserts the ALJ's determination that he is capable of medium work is not supported by *any* evidence in the record. Abramo points out the opinions and conclusions of the consultative disability examiner, Amy J. Tegels, APRN, do not support a finding that he has the ability to perform medium work. Abramo further argues the hypothetical questions provided to the vocational expert at the administrative hearing are flawed. Abramo maintains the ALJ's hypothetical questions to the vocational expert are incomplete because they do not properly account for all of his impairments and functional limitations, and incorrectly provided he was capable of medium work. Abramo concludes this matter should be remanded for a new RFC

13

determination based on a fully and fairly developed record, and to allow the ALJ to provide the vocational expert with a proper and complete hypothetical question.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In her decision, the ALJ thoroughly reviewed Tegels' findings from her consultative examination of Abramo.[5] In discussing Tegels' opinions, the ALJ noted:

> At the consultative physical examination, Nurse Tegels reported that [Abramo] would have some difficulties with bending, stooping, climbing and crawling with the need for precautions due to anticoagulation therapy. She is a nurse practitioner. However the opined [sic] was reviewed and signed by Dr. Severson. This assessment is given weight as reflected in the above residual functional assessment.

(Administrative Record at 28.) It is unclear from the ALJ's decision which of Tegels' opinions the ALJ is granting weight. Moreover, nowhere in her decision does the ALJ find or even suggest any inconsistencies with the record as a whole and Tegels' opinions.

In her consultative examination report, Tegels diagnosed Abramo with lumbago, arm strain associated with biceps tendon rupture, embolism, status post anticoagulation therapy, bilateral foot neuropathy, anxiety, and major depressive disorder. Tegels concluded:

> On physical exam today, [Abramo] does have a decrease in his physical capacity with upper and lower extremity problems. He does have a decrease in strength in his right upper extremity from a retained biceps tendon tear. He also has left hip pain and altered range of motion with some radiculopathy and marked edema in []his left lower extremity. He is not able to be on his feet or sit for extended periods of time. He will need certain restrictions for employment. It will also be hard for him to attain employment with his previous work injuries. I did appreciate neurological deficits today in his left foot. He will have difficulties with bending, stooping, climbing, and crawling.
>
> He also has issues with a history of a pulmonery [(sic)] embolus. He does have some residual shortness of breath secondary to this and is on chronic anticoagulation therapy,

---

[5] See Administrative Record at 22.

> which does come with moderate risk factors. He does have bleeding complications if an injury were to occur. He will definitely have trouble finding any type of employment with this that involves labor.
>
> [H]e also suffers from depression and anxiety, of which is fairly well controlled. He does seem quite anxious today on exam.

(Administrative Record at 585.) Tegels also indicated Abramo's "[l]ifting limit is about 25lbs with pain. He can't bend or twist without pain. He reports pain with climbing stairs, kneeling and crawling."[6]

Social Security Regulations define medium work as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). Here, the primary medical evidence providing for Abramo's functional abilities, Tegels' consultative examination, limits Abramo to lifting 25 pounds with pain. The ALJ "gave weight" to Tegels' opinions. Therefore, it is significant that Tegels' opinions do not support a finding of Abramo having the ability to perform medium work (lifting up to 50 pounds). Moreover, other than a conclusory statement in her decision, the ALJ provides no support for finding that Abramo is capable of performing medium work. In her decision, the ALJ stated "[o]verall, the evidence indicated that [Abramo] would be limited to medium exertional activities with limited climbing, working around hazards and environmental limitations as noted above due to the pulmonary problem and precautions." However, the ALJ does not explicitly or even implicitly address the "overall evidence" supporting an ability to perform medium work, or provide an explanation with support from the record for finding Abramo capable of performing medium work. Under such circumstances, the Court finds the ALJ's determination that Abramo is capable of performing medium work is unsupported by substantial evidence.

---

[6] Administrative Record at 581.

Therefore, the Court concludes the ALJ's RFC assessment is not based on all the relevant evidence, and is not supported by the medical evidence of record. *See Guilliams*, 393 F.3d at 803 (providing that an ALJ's RFC assessment must be based on all of the relevant evidence); *Casey*, 503 F.3d at 697 (Providing that "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record."). Accordingly, the Court believes remand is necessary for the ALJ to fully and fairly develop the record with regard to Abramo's exertional ability, including a reassessment of Abramo's RFC.

Turning to the issue of proper hypothetical questions to the vocational expert, under Social Security law, hypothetical questions posed to a vocational expert "must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985)."). Here, the Court determined remand was necessary to allow the ALJ to fully and fairly develop the record with regard to Abramo's level of exertional abilities, including reconsideration of Abramo's RFC. Accordingly, the Court believes remand is also necessary to allow the ALJ to reconsider the hypothetical questions posed to the vocational expert in order to make sure that they capture the concrete consequences of Abramo's limitations based on the medical evidence as a whole, including the opinions of Tegels and a full consideration of Abramo's exertional abilities and RFC. *See Hunt*, 250 F.3d at 625 (requiring the ALJ to "capture the concrete consequences of the claimant's deficiencies").

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: fully and fairly develop the record with regard to Abramo's exertional abilities and properly assess Abramo's RFC.

## VI. CONCLUSION

I recommend that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ should fully and fairly develop the record with regard to Abramo's exertional ability, including a reassessment of Abramo's RFC. The ALJ should also reconsider the hypothetical questions posed to the vocational expert in order to make sure that they capture the concrete consequences of Abramo's limitations based on the medical evidence as a whole, including the opinions of Tegels and full

consideration of Abramo's exertional abilities and RFC. Accordingly, I believe that this matter should be remanded for further proceedings as discussed herein.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **REVERSE** and **REMAND** this matter to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 14th day of January, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA